Carroll v South Nassau Communities Hosp.

2026 NY Slip Op 02099

April 8, 2026

Appellate Division, Second Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This decision is uncorrected and subject to revision before publication in the Official Reports.

Raymond Carroll, respondent,

v

South Nassau Communities Hospital, et al, appellants, et al., defendants.

Supreme Court of the State of New York, Appellate Division, Second Judicial Department

Decided on April 8, 2026

2022-04698, 2022-09504, 2023-05121, 2023-05534, (Index No. 601207/15)

Angela G. Iannacci, J.P.

Lara J. Genovesi

Carl J. Landicino

Laurence L. Love, JJ.

Lewis Johs Avallone Aviles, LLP, Islandia, NY (Amy E. Bedell of counsel), for appellant South Nassau Communities Hospital.

Vigorito, Barker, Patterson, Nichols & Porter, LLP (Lewis Brisbois Bisgaard & Smith LLP, New York, NY [Nicholas Hurzeler], of counsel), for appellant Diana Kontonotas.

Bamundo, Zwal, Schermerhorn & Caffrey LLP (The Breakstone Law Firm, P.C., Bellmore, NY [Jay L. T. Breakstone], of counsel), for respondent.

[*1]

DECISION & ORDER

In an action to recover damages for medical malpractice, the defendant South Nassau Communities Hospital appeals from a judgment of the Supreme Court, Nassau County (Roy S. Mahon, J.), dated May 4, 2022, and the defendant Diana Kontonotas separately appeals from (1) the judgment, (2) an order of the same court (Catherine Rizzo, J.) entered October 26, 2022, (3) an order of the same court (Catherine Rizzo, J.) entered April 13, 2023, and (4) an order of the same court (Catherine Rizzo, J.) entered June 14, 2023. The judgment insofar as separately appealed from by the defendant South Nassau Communities Hospital and the defendant Diana Kontonotas, upon an order of the same court (Roy S. Mahon, J.) entered January 15, 2021, inter alia, upon reargument, adhering to a prior determination in an order of the same court (Roy S. Mahon, J.) entered August 12, 2020, made upon renewal, adhering to a prior determination in an order entered February 19, 2020, denying those branches of those defendants' separate motions which were pursuant to CPLR 3211(a)(5) to dismiss the complaint insofar as asserted against each of them, and upon a jury verdict, is in favor of the plaintiff and against the defendant South Nassau Communities Hospital and the defendant Diana Kontonotas in the total sum of $1,913,685.83. The order entered October 26, 2022, denied the motion of the defendant Diana Kontonotas pursuant to CPLR 4404(a) to set aside the jury verdict and for judgment as a matter of law dismissing the complaint insofar as asserted against her, or, in the alternative, to set aside the jury verdict as contrary to the weight of the evidence and for a new trial, or, in the alternative, to set aside, as contrary to the weight of the evidence and as excessive, the jury verdict on the issue of damages. The order entered April 13, 2023, insofar as appealed from, upon reargument, adhered to the prior determination in the order entered October 26, 2022, denying the motion of the defendant Diana Kontonotas pursuant to CPLR 4404(a) to set aside the jury verdict and for judgment as a matter of law dismissing the complaint insofar as asserted [*2]against her, or, in the alternative, to set aside the jury verdict as contrary to the weight of the evidence and for a new trial, or, in the alternative, to set aside, as contrary to the weight of the evidence and as excessive, the jury verdict on the issue of damages. The order entered June 14, 2023, insofar as appealed from, denied that branch of the motion of the defendant Diana Kontonotas which was pursuant to CPLR 2601 for leave to deposit money in the amount of the judgment into court. The notice of appeal of the defendant South Nassau Communities Hospital from the order entered January 15, 2021, is also deemed to be a notice of appeal from the judgment (see CPLR 5501[a]).

ORDERED that the judgment is affirmed insofar as appealed from; and it is further,

ORDERED that the appeal from the order entered October 26, 2022, is dismissed, as that order was superseded by the order entered April 13, 2023, made upon reargument; and it is further,

ORDERED that the orders entered April 13, 2023, and June 14, 2023, are affirmed insofar as appealed from; and it is further,

ORDERED that one bill of costs is awarded to the plaintiff.

The plaintiff arrived by ambulance at the emergency department of the defendant South Nassau Communities Hospital (hereinafter the hospital) on the morning of September 26, 2012, complaining of, among other things, headache, nausea, and vomiting. He was initially seen by a triage nurse, who noted that he had slurred speech. The plaintiff was then treated by the defendant Diana Kontonotas, an emergency medicine doctor. Kontonotas conducted a neurological examination of the plaintiff and ordered a CT scan of the plaintiff's head, which did not show any abnormalities. In the afternoon, Kontonotas conducted another neurological examination. Kontonotas did not order a neurology consult. Kontonotas diagnosed the plaintiff with gastritis and discharged him. Two days later, the plaintiff was admitted to the hospital and required a ventriculostomy and craniectomy as a result of a posterior inferior cerebellar artery stroke. The plaintiff sustained permanent neurological damage from the stroke.

The plaintiff commenced this action against the hospital and Kontonotas, among others, to recover damages for medical malpractice. The hospital and Kontonotas separately moved, inter alia, pursuant to CPLR 3211(a)(5) to dismiss the complaint insofar as asserted against each of them on the ground that, pursuant to a settlement, a release given by the plaintiff to the defendants Sydney S. Yoon and Radisphere National Radiology Group, P.C. (hereinafter Radisphere), the parties responsible for interpreting the CT scan of the plaintiff's head conducted on September 26, 2012, also released the plaintiff's causes of action against the hospital and Kontonotas. In an order entered January 15, 2021, the Supreme Court, among other things, upon reargument, adhered to a prior determination in an order entered August 12, 2020, made upon renewal, adhering to a prior determination in an order entered February 19, 2020, denying those branches of the separate motions.

This action then proceeded to a jury trial. After the trial, the jury returned a verdict in favor of the plaintiff and against the hospital and Kontonotas, finding that Kontonotas was negligent in failing to order a neurology consult and that this negligence was a proximate cause of the plaintiff's injuries. The jury awarded the plaintiff damages for past lost earnings in the sum of $730,000, future lost earnings in the sum of $320,000, past pain and suffering in the sum of $800,000, and future pain and suffering in the sum of $700,000. A judgment was entered in favor of the plaintiff and against the hospital and Kontonotas in the total sum of $1,913,685.83.

Kontonotas moved pursuant to CPLR 4404(a) to set aside the jury verdict and for judgment as a matter of law dismissing the complaint insofar as asserted against her, or, in the alternative, to set aside the jury verdict as contrary to the weight of the evidence and for a new trial, or, in the alternative, to set aside, as contrary to the weight of the evidence and as excessive, the jury verdict on the issue of damages. In an order entered April 13, 2023, the Supreme Court, inter alia, upon reargument, adhered to a prior determination denying the motion. Kontonotas also moved, among other things, pursuant to CPLR 2601 for leave to deposit money in the amount of the [*3]judgment into court. In an order entered June 14, 2023, the court, inter alia, denied that branch of the motion. These appeals ensued.

The Supreme Court properly denied the separate motions of the hospital and Kontonotas which were pursuant to CPLR 3211(a)(5) to dismiss the complaint insofar as asserted against each of them on the basis of the release given by the plaintiff to Yoon and Radisphere. Pursuant to General Obligations Law § 15-108(a), "[w]hen a release . . . is given to one of two or more persons liable or claimed to be liable in tort for the same injury . . . it does not discharge any of the other tortfeasors from liability for the injury . . . unless its terms expressly so provide." However, "[t]he statute does not require that every discharged party be specifically named or identified" (Fiakpoey v Middlesworth, 118 AD3d 743, 745; see Wells v Shearson Lehman/American Express, 72 NY2d 11, 21-22). "A release which is clear and unambiguous will be fully enforced according to the plain language of the release" (Hoffmann v Horn, 157 AD3d 871, 873; see Koufakis v Siglag, 85 AD3d 872, 873-874).

Here, the release clearly and unambiguously applied to the causes of action against Yoon and Radisphere, as well as their employers, partners, coworkers, employees, agents, servants, and assigns. Contrary to their contentions, the hospital and Kontonotas did not establish that Kontonotas and Yoon, who had different employers, were coworkers, that Radisphere and Yoon were the hospital's partners, or that any other basis existed for concluding that the release applied to the plaintiff's causes of action against the hospital and Kontonotas. Accordingly, the Supreme Court properly determined that the plaintiff's causes of action against the hospital and Kontonotas were not barred by the release given to Yoon and Radisphere (see Hoffmann v Horn, 157 AD3d at 873).

"In order to establish the liability of a physician for medical malpractice, a plaintiff must prove that the physician deviated or departed from accepted community standards of practice, and that such departure was a proximate cause of the plaintiff's injuries" (Velasquez v Ruiz, 203 AD3d 786, 788; see Stewart v New York Hosp. Queens, 214 AD3d 919, 920). "Establishing proximate cause in medical malpractice cases requires a plaintiff to present sufficient medical evidence from which a reasonable person might conclude that it was more probable than not that the defendant's departure was a substantial factor in causing the plaintiff's injury" (Velasquez v Ruiz, 203 AD3d 786, 788 [internal quotation marks omitted]; see Shouldis v Strange, 227 AD3d 743, 745).

"A motion pursuant to CPLR 4404(a) to set aside a jury verdict and for judgment as a matter of law will be granted where there is simply no valid line of reasoning and permissible inferences which could possibly lead rational persons to the conclusion reached by the jury on the basis of the evidence presented at trial" (Velasquez v Ruiz, 203 AD3d 786, 788 [alteration and internal quotation marks omitted]; see Osorio v New York City Health & Hosps. Corp., 211 AD3d 842, 845).

Here, the plaintiff's evidence at trial was legally sufficient to establish departures from good and accepted standards of medical practice and that the departures were a proximate cause of the plaintiff's injuries. The plaintiff presented medical evidence from which a reasonable juror could conclude that Kontonotas departed from good and accepted standards of medical practice by failing to order a neurology consult in light of the plaintiff's symptoms and risk factors and that it was more probable than not that Kontonotas's conduct diminished the plaintiff's chance of a better outcome by depriving him of the opportunity to receive monitoring and certain treatment in the hospital starting on September 26, 2012 (see Chicoine v Mendola, 233 AD3d 841, 844; Shouldis v Strange, 227 AD3d at 745; Velasquez v Ruiz, 203 AD3d at 788).

Further, a jury verdict may not be set aside as contrary to the weight of the evidence unless the evidence preponderates so heavily in the moving party's favor that it "could not have been reached on any fair interpretation of the evidence" (Lolik v Big V Supermarkets, 86 NY2d 744, 746 [internal quotation marks omitted]; see Velasquez v Ruiz, 203 AD3d 786, 789). "The jury's resolution of the credibility of conflicting expert witnesses is entitled to great weight, as it is the jury that had the opportunity to observe and hear the experts" (Reitzel v Hale, 128 AD3d 1045, 1045; see [*4]Velasquez v Ruiz, 203 AD3d at 789). Here, the jury's findings that Kontonotas departed from good and accepted medical practice and that the departures were a substantial factor in causing injury to the plaintiff were based upon a fair interpretation of the evidence and, thus, were not contrary to the weight of the evidence (see Chicoine v Mendola, 233 AD3d at 844).

Moreover, the jury's verdict that the plaintiff was entitled to an award of damages for past and future lost earnings was supported by legally sufficient evidence and was not contrary to the weight of the evidence. The jury reasonably could have concluded, based on the evidence regarding the plaintiff's prior employment, his educational background, and the medical evidence regarding the nature and extent of his injuries, that the plaintiff was totally disabled and that, therefore, the projections of his earnings by his economist were properly based on an assumption that he was totally disabled (see Kowalsky v County of Suffolk, 139 AD3d 906, 907-908; Janda v Michael Rienzi Trust, 78 AD3d 899, 901; cf. Harris v City of New York, 2 AD3d 782, 784).

The damages awarded for past and future pain and suffering did not deviate materially from what would be reasonable compensation (see Chicoine v Mendola, 233 AD3d at 844).

The parties' remaining contentions either are without merit or need not be reached in light of our determination.

IANNACCI, J.P., GENOVESI, LANDICINO and LOVE, JJ., concur.

ENTER:

Darrell M. Joseph

Clerk of the Court